**Richard Harrison WELLS, Appellant**

v.

**Jacqueline Kay WELLS, Appellee.**

**No. 11–06–00269–CV.**

Court of Appeals of Texas,
Eastland.

March 27, 2008.

Deborah Smith McClure, Deborah Smith McClure, P.C., Attorney At Law, Amarillo, Stephen L. Johnson, Attorney At Law, Lubbock, TX, for appellant.

Donald M. Hunt, Lawrence M. Doss, Mullin Hoard & Brown, L.L.P., Attorneys At Law, Lubbock, William E. Fulbright, Fulbright & Casselberry, Attorney At Law, Lamesa, TX, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is a marital property distribution case. Following a bench trial, the trial court entered a divorce decree, confirmed that certain property was Jacqueline Kay Wells's separate property, and divided the community property and debts between the parties. Richard Harrison Wells filed this appeal complaining of the trial court's characterization of twelve items of farming equipment as Jacqueline's separate property and of the division of the community property. Finding no error, we affirm.

### I. *Background Facts*

Jacqueline initiated divorce proceedings. Richard responded by requesting a disproportionate share of the marital assets. Jacqueline amended her petition to include allegations of fault in the breakup of the marriage and fraud on the community and to request an unequal distribution in her favor. The trial court conducted a bench trial and orally rendered judgment granting a divorce and awarding Jacqueline a

disproportionate share of the marital assets. The trial court subsequently signed a divorce decree. The decree's division of the marital estate section included the following recitation:

> The Court further finds that Respondent has threatened Petitioner with bodily harm at times when he was not out of control and when he knew what he was saying, that Respondent has threatened to kill Petitioner, that Respondent is not an innocent spouse, that Respondent's conduct forced Petitioner to leave the family home and land, that Petitioner is the innocent spouse, that Petitioner should receive a disproportionately large portion of the community estate of Petitioner and Respondent and that the disproportionate division of such community estate, with the assets and liabilities awarded to petitioner in this decree, is proper, just, fair and reasonable under the facts of this case and applicable law.

Richard filed a motion for new trial. Richard challenged the trial court's property division and also argued that a new trial was warranted because of newly discovered evidence.[1] Richard's motion was overruled by operation of law.

## II. *Issues*

Richard challenges the trial court's property division with four issues. Richard contends that the trial court abused its discretion by making a grossly disproportionate award of the marital assets to Jacqueline, that the trial court abused its discretion by characterizing community assets as separate property, that the trial court abused its discretion in valuing the property of the marital estate, and that there are inherent conflicts in the trial court's judgment.

## III. *Standard of Review*

■ We review a trial court's division of property under an abuse of discretion standard. *Moroch v. Collins,* 174 S.W.3d 849, 857 (Tex.App.-Dallas 2005, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Sw. Bell Tel. Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965).

■ When an appellant challenges the trial court's order on legal or factual sufficiency grounds, we do not treat these as independent grounds of reversible error but, instead, consider them as factors relevant to our assessment of whether the trial court abused its discretion. *Boyd v. Boyd,* 131 S.W.3d 605, 611 (Tex.App.-Fort Worth 2004, no pet.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient, we consider whether the court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in the application of that discretion. *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.).

■■ Richard did not request findings of fact. We must, therefore, presume that the trial court made all the necessary findings to support its judgment. *Pharo v. Chambers County, Tex.,* 922 S.W.2d 945, 948 (Tex.1996). If the trial court's implied findings are supported by the evidence, we

---

1. Richard's motion refers to three affidavits. The clerk's record contains only the affidavit of Jacob Redekop. Because the presence of the motion itself confirms our jurisdiction and because Richard does not challenge the denial of his motion, it is unnecessary for us to abate this appeal and request a supplemental clerk's record.

must uphold the judgment on any theory of law applicable to the case. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). In determining whether some evidence supports the judgment and implied findings of fact, we consider only that evidence most favorable to the issue and disregard entirely any contrary evidence. *Id.*

■ When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal sufficiency review. *See In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex.2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM.CODE ANN. § 101.007 (Vernon 2002). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980). While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Boyd*, 131 S.W.3d at 611.

## IV. *Analysis*

### A. *Jacqueline's Separate Property.*

Richard argues that the trial court abused its discretion when it characterized twelve items of farming equipment as Jacqueline's separate property because she failed to produce clear and convincing evidence to support this characterization. Jacqueline responds that the evidence established that the farming equipment is separate property because it was gifted to her by her parents.

■ All property on hand at the dissolution of marriage is presumed to be commu-

nity property. TEX. FAM.CODE ANN. § 3.003(a) (Vernon 2006). It is a rebuttable presumption requiring a spouse claiming assets as separate property to establish its separate character by clear and convincing evidence. TEX. FAM.CODE ANN. § 3.003(b) (Vernon 2006). The characterization of property as community or separate is determined by the inception of title. *Boyd*, 131 S.W.3d at 612.

■ Property acquired during marriage by gift is separate property. TEX. FAM.CODE ANN. § 3.001(2) (Vernon 2006). A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 569 (1961). Three elements are required to establish the existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Long v. Long*, 234 S.W.3d 34, 40 (Tex.App.-El Paso 2007, pet. denied). The intent must exist at the time of the transfer, not at the time of a subsequent divorce. *Id.*

■ To prevail on a mischaracterization challenge, Richard must establish not only that the trial court erred but that this error caused sufficient harm to constitute an abuse of discretion. *Long*, 234 S.W.3d at 37; *see also Vandiver v. Vandiver*, 4 S.W.3d 300, 302 (Tex.App.-Corpus Christi 1999, pet. denied) (mischaracterization of community property as separate property is not reversible unless the mischaracterization had more than a de minimis effect on the just and right division).

■ The lack of valuation findings prevents us from determining what impact the trial court's characterization had on the total distribution of assets; and, on that basis alone, we must affirm the trial court.[2] Richard, however, has also failed to establish that the trial court's characterization

2. Jacqueline suggests that we affirm because the separate property's value is insignificant when compared to the remainder of the marital property. The same reasoning that pre-

was in error. Jacqueline produced a list of twelve items of farming equipment that she claimed was her separate property. Richard agreed that these twelve items were a gift from Jacqueline's parents. The dispute was whether the gift was made to Jacqueline or to both parties.

■■■ Jacqueline's mother testified that, when her husband retired, he gave part of his farming equipment to Jacqueline and part to a son and sold part to Jacqueline and Richard. She testified that the gift was not to Jacqueline and Richard but to Jacqueline alone. She identified the twelve items of equipment in dispute as the equipment that her husband had given to Jacqueline. Richard argues that this testimony is insufficient to rebut the community property presumption, citing the general rule that mere testimony that property is separate without any tracing of the property is insufficient.[3]

■■■ The general rule is inapplicable because there was no need to trace assets. There was no dispute about what items of equipment were gifted, and there was no claim that any of this equipment had been sold, traded, or otherwise converted into any other asset. *See Cockerham v. Cockerham,* 527 S.W.2d 162, 168 (Tex.1975) (separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can trace the assets on hand during the marriage back to property that is separate in character). The mere fact that this equipment may have been used in connection with other equipment or to help facilitate the production of crops whose proceeds were community property would not

alter the character of the equipment. The trial court had sufficient evidence to conclude that the twelve pieces of equipment were gifted to Jacqueline and, therefore, did not abuse its discretion by confirming that they were Jacqueline's separate property. Richard's second issue is overruled.

### B. Valuation of Marital Property.

■■■ Richard complains that the trial court abused its discretion by improperly valuing Jacqueline's teacher retirement account and the farming equipment. Richard acknowledges that the decree does not assign a value to the retirement account but contends that the trial court's statements at the conclusion of the trial demonstrate a misapplication of case law. With respect to the farming equipment, Richard acknowledges that the parties presented conflicting valuation evidence but complains that there was insufficient valuation evidence to support the trial court's division of assets.

■■■ Richard's complaint presents no basis for reversal because the trial court made no findings on the value of the retirement account or farming equipment. First, the trial court's statements at the end of the trial do not constitute findings of fact. *See In re Doe 10,* 78 S.W.3d 338, 340 n. 2 (Tex.2002) (oral comments from the bench are not written findings of fact); *see also In re W.E.R.,* 669 S.W.2d 716 (Tex.1984) (appellate courts may not look to any comments that the trial court makes at the conclusion of a bench trial as a substitute for findings of fact). Second, we have reviewed the entirety of the trial court's comments and find no indication of what value it assigned to the account.[4]

vents us from considering Richard's valuation arguments prevents us from accepting Jacqueline's de minimis value contention.

**3.** *See Boyd,* 131 S.W.3d at 612.

**4.** Richard's brief refers us to a specific page of the reporter's record in support of this contention where the trial court was orally rendering judgment. Of the retirement account, the trial court said: "As far as the retirement goes, for those of us who were fortunate enough to go to law school after

Because we do not know what value the trial court assigned to the retirement account or farming equipment, we cannot conclude that the trial court abused its discretion when it valued those assets. Richard's third issue is overruled.

### C. The Distribution of the Marital Property.

 Richard complains that the trial court awarded Jacqueline a disproportionate share of the marital assets even though there was no evidence of a substantial and probative character to support this division. Because the trial court did not make any valuation findings, we do not know what share of the marital estate either party received. Richard contends that Jacqueline received 75% of the marital assets.[5] Jacqueline responds that Richard received between 26% to 45% of the marital estate depending upon what asset values the trial court utilized.[6] It is difficult—if not impossible—to determine whether the trial court abused its discretion by dividing the marital estate when we do not know what percentage of the marital assets either party received. However, because both parties concede that Jacqueline received a larger share than Richard, we will assess whether an unequal distribution constitutes an abuse of discretion.

 Texas law requires trial courts to divide the estate of the parties in a manner that is just and right having due regard for the rights of each party. TEX. FAM.CODE ANN. § 7.001 (Vernon 2006). There is no requirement that the court effectuate an equal division. *Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981). In reviewing the equitable remedy fashioned by the trial court in achieving a just and right division, we must determine not only whether the trial court's findings are supported by the evidence, we must also determine whether error, if established, caused the trial court to abuse its discretion. *Garcia v. Garcia,* 170 S.W.3d 644, 649 (Tex.App.-El Paso 2005, no pet.). We must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion in dividing marital property. *Pletcher v. Goetz,* 9 S.W.3d 442, 446 (Tex.App.-Fort Worth 1999, pet. denied).

 A disproportionate division must have a reasonable basis. *Smith v. Smith,* 143 S.W.3d 206, 214 (Tex.App.-Waco 2004, no pet.). If there is some evidence of a substantive and probative character to support the decision, the trial court does not abuse its discretion if it orders an unequal division of the marital estate. *Ohendalski v. Ohendalski,* 203 S.W.3d 910, 914 (Tex.App.-Beaumont 2006, no pet.). Generally, in a fault-based divorce, the court may consider the conduct of the errant spouse in making a disproportionate distribution of the marital estate. *Young v. Young,* 609 S.W.2d 758, 761–62 (Tex.1980).

---

*Berry v. Berry,* [647 S.W.2d 945 (Tex.1983)], we had it pounded into us quite heavily." From this comment we can draw no conclusion.

5. He also argues that, if the trial court's characterization of Jacqueline's separate property is reversed, her share of the marital estate rises to 90%. Because we are affirming the trial court's characterization of Jacqueline's property, we will utilize Richard's 75/25 contention.

6. Jacqueline's brief contains two appendixes. One is a table listing the community property awarded to her, and the other lists the community property awarded to Richard. The tables include the highest and lowest values testified to for each asset. Richard objects to our consideration of this "newly minted evidence." Our holding makes consideration of these tables unnecessary, but we point out that a summary of the valuation evidence offered at trial cannot be fairly described as newly minted evidence and thus should not be.

■ The divorce decree includes a recitation that Richard threatened to kill Jacqueline, that she was the innocent spouse, and that his conduct forced her to leave the family home and land. Richard contends that this recitation is not supported by the evidence when it is viewed in the context of both parties. In his reply brief, Richard contends that a full and fair review of the reporter's record establishes the error of the trial court's division. Richard's contention misapplies the standard of review. The issue is whether the trial court had sufficient evidence upon which to exercise its discretion. *Lindsey,* 965 S.W.2d at 592. When making this determination, we consider only that evidence most favorable to the issue. *Worford,* 801 S.W.2d at 109.

■ We also point out that recitations in a judgment are not a substitute for findings of fact. *Willms v. Americas Tire Co., Inc.,* 190 S.W.3d 796, 802 (Tex.App.-Dallas 2006, pet. denied). Consequently, we do not review this recitation as a finding of fact but merely inquire if there was sufficient evidence of fault to support the trial court's exercise of discretion. Richard admitted that he had threatened Jacqueline, that he had done so intentionally, and that he had probably done so more than once. He admitted that he used threats to make her do what he wanted and that, on the day the parties separated, he ordered her to get out of the house and off his land or else he would kill her. Jacqueline testified that on this occasion he took her by the hair, pushed her as hard as he could, and began screaming at her. He told her later that day that, if she did not get off his property and take "every living thing" with her, he might have to kill everything in the house. She blamed him for the breakup of their mar-

riage, described him as manipulative and controlling, and testified that he refused to seek medical help for a condition that caused him to be irrational or irritable.

Richard argues—without providing any record reference—that his threat to kill Jacqueline was an idle threat made in anger with no present intention of performing. That, however, is not for us to decide. As the supreme court noted in *Murff,* the trial court "has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic. As the trier of fact, the court is empowered to use its legal knowledge and its human understanding and experience." 615 S.W.2d at 700. We leave to the trial court the assessment of the seriousness of Richard's threat.

■ Jacqueline also argues that the trial court acted within its discretionary authority because of evidence that Richard wasted community assets and attempted fraud on the community estate. In his reply brief, Richard contends that there was no fraud on the community, and argues that "Jacqueline cannot fabricate grounds upon which to support the trial court's award." This argument could be better phrased because when read literally it accuses opposing counsel of committing a fraud on the court. We assume that no such allegation was intended and that Richard's intended contention is that fraud on the community cannot support a disproportionate division because the trial court did not refer to this in its comments at the conclusion of the trial or in the divorce decree. We have previously held that the trial court's statements at the end of trial do not constitute findings of fact. Moreover, even were we to consider them, they do not purport to be an exhaustive description of all the fact findings,[7] nor do they

---

7. For example, the trial court referred to some of the reasons advanced by Richard for

a disproportionate distribution in his favor.

excuse us from our obligation to affirm the trial court on any basis supported by the record.

Richard contends that there were no pleadings of fraud on the community and no evidence in the record of fraud. Neither contention is correct. Richard made the first request for a disproportionate share of the community property in his amended answer. Jacqueline immediately filed an amended petition and requested a disproportionate share of the community property for several reasons, including "fraud on the community." Jacqueline amended her petition once more before trial but maintained the fraud allegation.

■■■ There was also evidence of fraud on the community. In late 2004 and early 2005, Richard paid his father and mother $7,066.45 in wages for working on the farm. Richard's father was 80 years old at the time. Richard paid his parents $7.00 an hour. The paychecks were net of withholding. The record does not indicate how much money was withheld, but even using the net figures, Richard's payments would have required his parents to work more than 1,000 hours during this period of time. Jacqueline testified that Richard's father did not work on their farm and that, for at least part of the period covered by the checks, he was incapable of working because of an abdominal aneurism surgery. The court had sufficient evidence to conclude that the payments to Richard's parents were not for wages and, therefore, to determine that he had committed fraud on the community estate.

■■■ Richard points to several of the other *Murff* factors that he contends support a disproportionate distribution in his favor. We cannot substitute our judgment for that of the trial court. Consequently, even if we were convinced that consideration of all the *Murff* factors supports a

The court indicated that it did not accept his

different division, that alone would not allow us to conclude that the trial court abused its discretion. Finally, Richard asks us to consider the affidavits attached to his motion for new trial. This we cannot do because Richard assigns no error to the denial of his motion for new trial.

There was sufficient evidence from which a trial court could conclude that a disproportionate division was just and right; therefore, the court did not abuse its discretion. Issue one is overruled.

### D. Conflicts in the Judgment.

■■■ Richard argues that the judgment contains inherent conflicts that warrant a new trial. When interpreting a divorce decree, courts apply the general rules regarding construction of judgments. *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex.1997). Judgments should be construed as a whole to harmonize and give effect to the entire decree. *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex.1976). If the decree, when read as a whole, is unambiguous, the court must effectuate the order in light of the literal language used. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex.2003).

■■■ Richard does not contend that the decree is ambiguous. Our review, therefore, is limited to the decree's language. Richard points to that portion of the divorce decree requiring each party to pay the indebtedness on the property it was awarded but contends that elsewhere he was specifically ordered to pay the indebtedness on a Case tractor awarded to Jacqueline. Richard does not identify which debt he was wrongfully required to assume or which of Jacqueline's tractors he was required to finance.

Jacqueline was awarded two tractors. These were described as a 1998 Case and a

contentions but did not elaborate on why.

1996 Case. The decree requires Richard to pay:

> All purchase money indebtedness owed in connection with the Case tractors herein awarded to Respondent in the present approximate amounts of $74,643.00 and $8,977.00.

The decree awards Richard several tractors but does not indicate which two were encumbered. We note that Richard's first amended inventory and appraisement identifies two tractor loans. One was for $74,643 and encumbered a MX 210 Case tractor. The second was for $8,977 and encumbered a 7230 Case tractor. Among the tractors awarded Richard are a Case IH MX 210, a 1996 Case IH 7230 MFWD, and a 1994 Case IH 7230 MFWD. In his inventory and appraisement, Richard valued the 1996 7230 at $25,500 and the 1994 7230 at $23,000.

The MX 210 Richard was awarded and the $74,643 debt he was obligated to assume are clearly connected. The $8,977 debt could be associated with either of the 7230 tractors he received. Nothing in the decree suggests that this debt was associated with either the 1996 or 1998 Case tractors Jacqueline received; thus, no conflict was shown.

Richard next complains that he was awarded the equipment purchased after separation but that Jacqueline received the gooseneck trailer. There is no conflict between these two awards. Richard was awarded "[a]ll cattle working equipment bought after separation and in Respondent's possession." Jacqueline was awarded a "Goose neck trailer." The decree does not indicate that the gooseneck trailer was used for working cattle, that it was purchased by Richard after the parties' separation, or that it was in his possession.

Finally, Richard complains that several of his awards are transparent awards that are of no value. Even if we assume that his description of the decree is correct,

Richard has identified no other conflicting provision of the decree but merely restates his criticism of the division of assets. Issue four is overruled.

### V. *Holding*

The judgment of the trial court is affirmed.